UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

QUADREE SMITH,

      Petitioner,                                   Hon. Katharine S. Hayden

      v.                                        Civil No. 14-7142

UNITED STATES OF AMERICA,

      Respondent.

---

UNITED STATES' ANSWER IN OPPOSITION TO PETITIONER'S MOTION
PURSUANT TO 18 U.S.C. § 2255

---

PAUL J. FISHMAN
United States Attorney


STEPHANIE RANEY
Special Assistant U.S. Attorney
970 Broad Street, Suite 700
Newark, New Jersey 07102
(973) 645-2700

# TABLE OF CONTENTS

TABLE OF AUTHORITIES...........................................................................iii-vi

FACTS AND PROCEDURAL BACKGROUND.................................................1

ARGUMENT...........................................................................................4

   I.  LEGAL STANDARD............................................................................6

  II.  SMITH'S MOTION IS UNTIMELY AND MUST BE DENIED....................7
       A.     Section 2255(f)(4)'s Limitations Period Does Not Apply...............7
       B.     Equitable Tolling Does Not Apply.............................................11

 III. SMITH WAIVED HIS RIGHT TO MAKE SUBSTANTIVE CLAIMS IN A
      § 2255 MOTION................................................................................12
       A.     Smith's Plea Agreement Prohibits the Filing of a § 2255
             Motion .............................................................................12
       B.     Smith Waived His Substantive Claims When He Pled Guilty.......14
       C.     Smith Failed to Preserve His Rights on Direct Appeal................16
       D.     Smith Waived His Right to Challenge This Court's Jurisdiction
             Over His Plea Hearing..........................................................17

 IV. SMITH'S SUBSTANTIVE CLAIMS ARE NOT COGNIZABLE UNDER
      § 2255............................................................................................19
       A.     Claim One Does Not Merit Relief ............................................20
       B.     Claims Five and Six Do Not Merit Relief...................................21

  V.  SMITH'S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM IS
      WITHOUT MERIT.............................................................................22
       A.     Legal Framework.................................................................22
       B.     Smith's Claim Should Be Denied Because He Cannot Show
             Actual Prejudice.................................................................25
            1.    Conclusory Allegations Are Not Sufficient.........................26
            2.    The Indictments Would Have Been Dismissed Without
                Prejudice......................................................................28
            3.    Smith Cannot Show It Would Have Been Logical For Him
                 to Reject the Plea Agreement...........................................31

CONCLUSION......................................................................................35

# TABLE OF AUTHORITIES

**Cases**

*Armstrong v. United States*, Civil Action No. 13-2029 (SDW), 2015 U.S. Dist. LEXIS 86989 (D.N.J. July 6, 2015) ......................................................... 26, 27

*Baxter v. United States*, 966 F.2d 387 (8th Cir. 1992) .................................. 15

*Blanding v. United States*, No. 1:11-cr-00051, 2015 U.S. Dist. LEXIS 44792 (M.D. Pa. Apr. 6, 2015) .................................................................................. 8

*Blay v. United States*, Civil Action No. 12-1381 (FLW), 2013 U.S. Dist. LEXIS 37634 (D.N.J. Mar. 18, 2013) ...................................................................... 10

*Brecht v. Abrahamson*, 507 U.S. 619 (1993) ................................................. 6

*Brown v. Shannon*, 322 F.3d 768 (3d Cir. 2003) .......................................... 11

*Buehl v. Vaughn*, 166 F.3d 163 (3d Cir. 1999) .............................................. 22

*Campbell v. Burris*, 515 F.3d 172 (3d Cir. 2008) .................................... 25, 27

*Casper v. Ryan*, 822 F.2d 1283 (3d Cir. 1987) ....................................... 19, 22

*Cochran v. Phelps*, 623 F. Supp. 2d 544 (D. Del. 2009) ............................... 14

*Cooney v. Fulcomer*, 886 F.2d 41 (3d Cir. 1989) ......................................... 20

*David v. United States*, 134 F.3d 470 (1st Cir. 1998) ................................... 27

*Davis v. United States*, 417 U.S. 333 (1974) ................................................ 20

*Dickson v. United States*, Civil Action No. 12-7001 (PGS), 2015 U.S. Dist. LEXIS 100015 (D.N.J. July 30, 2015) ...................................................................... 11

*Dixon v. United States*, Civil Action No. 04-3985 (JAG), 2006 U.S. Dist. LEXIS 99917 (D.N.J. Dec. 4, 2006) .......................................................................... 27

*Ford v. Gonzalez*, 683 F.3d 1230 (9th Cir. 2012) ......................................... 10

*Gov't of Virgin Is. v. Bradshaw*, 726 F.2d 115 (3d Cir. 1984) ...................... 24

*Gov't of Virgin Is. v. Nicholas*, 759 F.2d 1073 (3d Cir. 1985) ........................ 6

*Hill v. Lockhart*, 474 U.S. 52 (1985) ............................................................ 23

*Hill v. United States*, 368 U.S. 424 (1962) .................................................... 6

*Johnson v. United States*, 294 F. App'x 709 (3d Cir. 2008) .......................... 24

*Kimmelman v. Morrison*, 477 U.S. 365 (1986) ............................................. 23

*Kowalak v. United States*, 645 F.2d 534 (6th Cir. 1981) .............................. 15

*Mayberry v. Petsock*, 821 F.2d 179 (3d Cir. 1987) ...................................... 25

*McBride v. Houtzdale*, 687 F.3d 92 (3d Cir. 2012) ....................................... 23

*McKnight v. United States*, 27 F. Supp. 3d 575 (D.N.J. 2014) ...................... 16

*Munez v. United States*, 462 F. App'x 172 (3d Cir. 2011) ............................. 28

*Munez v. United States*, Civil No. 06-499 (JBS), 2011 U.S. Dist. LEXIS 5845 (D.N.J. Jan. 20, 2011) ................................................................. 28

*Munez v. United States*, Civil No. 06-499 (JBS), 2010 U.S. Dist. LEXIS 73583 (D.N.J. July 21, 2010) ................................................................. 28

*Owens v. Boyd*, 235 F.3d 356 (7th Cir. 2000) .......................................... 10

*Pabon v. Mahanoy*, 654 F.3d 385 (3d Cir. 2011) ..................................... 11

*Parkin v. United States*, 565 F. App'x 149 (3d Cir. 2014) ........................ 16

*Pero v. Duffy*, Civil No. 10-3107 (JAP), 2013 U.S. Dist. LEXIS 176068 (D.N.J. Dec. 16, 2013) ................................................................................... 21

*Reed v. Farley*, 512 U.S. 339 (1994) ............................................. 21, 22

*Sanchez-Castellano v. United States*, 358 F.3d 424 (6th Cir. 2004) ................ 7

*Slack v. McDaniel*, 529 U.S. 473 (2000) .............................................. 36

*Smith v. Robbins*, 528 U.S. 259 (2000) .............................................. 22

*Sterling v. Tennis*, Civil No. 05-143, 2006 U.S. Dist. LEXIS 37671 (E.D. Pa. Mar. 7, 2006) ................................................................................... 21

*Strickland v. Washington*, 466 U.S. 668 (1984) ...................................... 22

*Thomas v. United States*, No. 2:09-cr-00277-RDP-JEO, 2014 U.S. Dist. LEXIS 132483 (N.D. Ala. Sept. 22, 2014) ................................................... 10

*United States ex rel. Esola v. Groomes*, 520 F.2d 830 (3d Cir. 1975) ............ 20

*United States v. Astorga*, 457 F. App'x 698 (9th Cir. 2011) ......................... 8

*United States v. Azubuike*, 267 F. App'x 731 (10th Cir. 2008) ...................... 8

*United States v. Bass*, 268 F. App'x 196 (3d Cir. 2008) ............................ 11

*United States v. Bates*, Civil No. 3:04-CR-0251, 2008 U.S. Dist. LEXIS 1096 (M.D. Pa. Jan. 7, 2008) ............................................................... 17

*United States v. Berger*, Criminal No. 09-308, 2015 U.S. Dist. LEXIS 87932 (W.D. Pa. July 7, 2015) ................................................................. 8

*United States v. Booth*, 432 F.3d 542 (3d Cir. 2005) ............................... 24

*United States v. Cegledi*, No. 13-3958, 2015 U.S. App. LEXIS 12543 (3d Cir. July 21, 2015) ......................................................................... 25

*United States v. Coleman*, Criminal No. 13-356, 2015 U.S. Dist. LEXIS 151949 (E.D. Pa. Nov. 5, 2015) ............................................................... 15

*United States v. Dawson*, 857 F.2d 923 (3d Cir. 1988) .......................... 24, 26

*United States v. Dung Bui*, 795 F.3d 363 (3d Cir. 2015) ........................... 23

*United States v. Eaddy*, 595 F.2d 341 (6th Cir. 1979) ............................. 15

*United States v. Fazio*, 795 F.3d 421 (3d Cir. 2015) ............................... 24

*United States v. Frady*, 456 U.S. 152 (1982) ...................................... 16

iv

*United States v. Fulford*, 825 F.2d 3 (3d Cir. 1987) ........................................ 14

*United States v. Galvan*, 408 F. App'x 224 (10th Cir. 2011) ........................... 8

*United States v. Garth*, 188 F.3d 99 (3d Cir. 1999) ...................................... 16

*United States v. Gouse*, 798 F.3d 39 (1st Cir. 2015) .................................... 29

*United States v. Gray*, 878 F.2d 702 (3d Cir. 1989) ..................................... 23

*United States v. Hankerson*, 496 F.3d 303 (3d Cir. 2007) ........................... 23

*United States v. Johnson*, 590 F. App'x 176 (3d Cir. 2014) ...................... 7, 11

*United States v. Jones*, 566 F.3d 353 (3d Cir. 2009) .................................... 33

*United States v. Lilly*, 536 F.3d 190, 195 (3d Cir. 2008) ............................... 26

*United States v. Lualemaga*, 280 F.3d 1260 (9th Cir. 2002) ........................ 20

*United States v. Mancebo*, Criminal No. 1:11-CR-073, 2014 U.S. Dist. LEXIS 93020 (M.D. Pa. July 9, 2014) ...................................................................... 24

*United States v. Macomber*, 717 F.3d 607 (8th Cir. 2013) ...................... 30, 31

*United States v. McKinney*, 395 F.3d 837 (8th Cir. 2005) ............................. 29

*United States v. Morales*, 71 F. App'x 692 (9th Cir. 2003) ........................... 10

*United States v. Nino*, 878 F.2d 101 (3d Cir. 1989) ..................................... 26

*United States v. Palmer*, 574 F.2d 164 (3d Cir. 1978) ...................... 14, 18, 19

*United States v. Robinson*, 290 F. Supp. 2d 808 (E.D. Mich. 2003) ......... 20, 21

*United States v. Robles*, No. D.C. Civil No. 2005-091, 2012 U.S. Dist. LEXIS 40135 (D.V.I. Mar. 23, 2012) ...................................................................... 6

*United States v. Solomon*, No. 2: 12-cv-0282, 2013 U.S. Dist. LEXIS 31211 (W.D. Pa. Mar. 7, 2013) ............................................................................. 6

*United States v. Thomas*, 221 F.3d 430 (3d Cir. 2000) ................................ 24

*United States v. Tuyen Quang Pham*, 587 F. App'x 6 (3d Cir. 2014) ............. 24

*Washington v. Sobina*, 475 F.3d 162 (3d Cir. 2007) .................................... 15

*Wims v. United States*, 225 F.3d 186 (2d Cir. 2000) ..................................... 7

## Federal Statutes

18 U.S.C. § 371 ............................................................................................ 2

18 U.S.C. § 3742 .......................................................................................... 13

18 U.S.C. § 1962(c) ....................................................................................... 2

18 U.S.C. § 922(a)(1)(A) ................................................................................ 2

18 U.S.C. § 924(c)(1)(A)(iii) .......................................................................... 34

28 U.S.C. § 2255 ................................................................................... *passim*

28 U.S.C. § 2255(b) ...................................................................................... 25

28 U.S.C. § 2253(c)(2) ................................................................ 36

28 U.S.C. § 2255(f)(1) ................................................................ 7

28 U.S.C. § 2255(f)(4) ............................................... 7, 8, 9, 10, 11

**Other**

Fed. R. App. P. 4(b) ................................................................ 7

On November 13, 2014, Petitioner Quadree Smith ("Smith") filed a motion, *pro se*, to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255 (the "2255 Motion"). (Dkt. No. 1.)  For the reasons set forth below, the 2255 Motion should be dismissed without any further proceedings.

## FACTS AND PROCEDURAL BACKGROUND[1]

In late 2003, following a multi-year investigation, Smith was one of more than 40 Double II Bloods (the "Double II") gang members arrested and charged with racketeering, drug, firearm, and violent-crime offenses.  The Government's investigation revealed that Smith was a co-head of the East Orange, New Jersey Double II set, and, in this capacity, he engaged in murder, ordered other Double II members to commit murders, and committed various assaults and other violent acts.  Smith also ran an extremely successful heroin trafficking organization and was involved in trafficking firearms from Ohio to New Jersey, where they were then sold to other Double II members.

On or about December 5, 2003, a three-count Indictment was returned against Smith, charging a conspiracy to deal in firearms without a license, dealing in firearms without a license, and being a felon in possession of a weapon.  On or about October 14, 2004, a 66-count Superseding Indictment was returned against Smith and others, charging a racketeering conspiracy, racketeering (including 35 racketeering acts), violent crimes in aid of racketeering, offenses related to firearms, and individual narcotics sales.  On or about February 10, 2005, a 66-count Second Superseding Indictment was

---

[1]     *See* Presentence Investigation Report ("PSR") for a more fulsome discussion of the facts.

returned against Smith and others, charging the same counts as the Superseding Indictment.[2]  On or about January 5, 2006, a 68-count Third Superseding Indictment was returned against Smith and others, charging racketeering, a racketeering conspiracy, offenses in aid of racketeering, offenses related to firearms, and a heroin distribution conspiracy.  A trial date was set by the Court for September 12, 2006.

Jury selection began on July 11, 2006 and spanned several days. During trial, on September 21, 2006, pursuant to a written plea agreement between the United States and Smith, Smith pled guilty to two counts contained in the Third Superseding Indictment, specifically: (1) Count Two: Racketeering in violation of 18 U.S.C. § 1962(c) (consisting of four specific racketeering acts, including murder, attempted murder, conspiracy to commit murder, and conspiracy to distribute heroin); and (2) Count Forty-Nine: conspiracy to deal in firearms without a license, contrary to 18 U.S.C. § 922(a)(1)(A) and in violation of 18 U.S.C. § 371. *United States v. Quadree Smith*, Crim. No. 03-844 (KSH) (Dkt. No. 499), attached as Exhibit A.  In exchange, the Government agreed to dismiss the remaining counts.[3]  Notably, in agreeing to dismiss Counts 37, 39, and 41 (possession, use, and discharge

---

[2]    The Second Superseding Indictment added an additional defendant.

[3]    These other counts pertained to (i) conspiracy to commit racketeering acts, (ii) various Violent Crimes in Aid of Racketeering, including conspiracy to commit murder, assault with a dangerous weapon, and conspiring to commit assault, (iii) various firearms-related offenses, including discharging a firearm during and in relation to a crime of violence, possession of a firearm by a convicted felon, and dealing in firearms without a license, and (iv) drug distribution offenses, including conspiracy to distribute and possess with intent to distribute narcotics and possession with intent to distribute narcotics.

of a firearm during and in relation to a crime of violence), Smith was spared a mandatory minimum and consecutive sentence of 60 years for these firearms-related offenses.

The plea agreement dated July 7, 2006 and signed by Smith and his attorney, Randy Davenport ("Davenport")[4] on September 21, 2006, was a fully-stipulated Guidelines plea agreement.  The plea agreement granted Smith the following concessions:

- The Government did not oppose a 3-point reduction for acceptance of responsibility, despite the fact that Smith had filed pretrial motions and opted to start trial before ultimately pleading guilty;

- The Government allowed Smith to plead guilty to only two counts charged in the Third Superseding Indictment and agreed to dismiss the remaining counts; and

- The Government agreed that the sentence to be imposed should run concurrently with Smith's manslaughter sentence for the April 29, 2000 murder of Bryant Williams.

*See* Ex. A at 1, 10, 11 at ¶¶ 17-18, and 21.

On April 17, 2007, this Court sentenced Smith to a term of 314 months to run concurrently with the portion of his undischarged state terms of imprisonment in the State of New Jersey.  The Court also adjusted Smith's sentence pursuant to U.S.S.G. § 5G1.3(b), giving him credit for 46 months already served for conduct relating to the racketeering offense. *United States v. Quadree Smith*, Crim. No. 03-844 (KSH) (Dkt. No. 625), attached as Exhibit B.

On or about November 13, 2014, Smith filed the instant motion seeking to vacate and set aside his sentence pursuant to 28 U.S.C. § 2255.  Smith's

---

[4]    Smith was also represented by Tom Ashley, Esq. prior to being represented by Davenport.

motion appears to raise seven grounds, which are briefed in the body of his motion. *See* Brief for the Petitioner, *Smith v. United States*, Civ. No. 14-7142 (KSH), Dkt. No. 1. Attach. 1 ("Petitioner's Brief").  Smith's arguments can be broken down into two general categories: "substantive" claims and "ineffective assistance of counsel" claims.  The substantive claims pertain to alleged violations of the Interstate Agreement on Detainers Act (the "IAD") and are as follows: (1) government and prison officials failed to inform Smith of his rights under the IAD (Claim One); (2) Smith did not knowingly and voluntarily waive his IAD rights because he did not know they existed (Claim Three); (3) Smith's rehabilitation was interrupted as a result of the alleged IAD violations (Claim Four); (4) the Government violated Smith's right to a speedy trial under the IAD (the "speedy trial rights") (Claims Five and Six); and (5) the Government violated Smith's right not be shuttled between state and federal custody (the "anti-shuttling rights") (Claim Seven).  The ineffective assistance of counsel claim focuses on defense counsel's failure to inform Smith of the existence of the IAD and his rights thereunder, and is as follows: defense counsel were ineffective, because they failed to inform Smith of his rights under the IAD at any time during the criminal proceedings, and had he known of these rights, Smith would have felt "comfortable" with defense counsel and proceeded to trial (Claim Two).

## **ARGUMENT**

Smith's 2255 Motion suffers from a host of fatal flaws.  As an initial matter, the motion is untimely because it was filed more than six years after

Smith's judgment of conviction became final, and he is not entitled to equitable tolling.  Therefore, on this basis alone the Court can summarily dismiss Smith's 2255 Motion without further proceedings.  Even putting this aside, however, Smith's substantive claims also fail to warrant the requested relief.  First, Smith entered into a written plea agreement with the Government, wherein he explicitly waived the right to file the instant motion, so long as he was sentenced to 360 months or less (which he was).  Second, by pleading guilty, Smith waived any pre-plea IAD violations.  Third, Smith did not file a direct appeal and therefore has not properly preserved any of his claims alleging substantive IAD violations.  Fourth, a number of Smith's substantive IAD claims are not cognizable in a § 2255 motion.  Finally, Smith cannot show that the Court lacked subject matter jurisdiction to entertain his plea.[5]

Again, setting aside the untimeliness issues under which the motion should fail, Smith's ineffective assistance of counsel claim would fare no better.  First, Smith's arguments consist primarily of self-serving, unsupported allegations that are insufficient to show actual prejudice as required by law.  Second, even ignoring these pleading deficiencies, Smith cannot show any actual prejudice, because he cannot show that this Court would have dismissed the Indictment against him *with prejudice*.  Finally, Smith's ineffectiveness claim fails because he cannot show that, but for counsel's alleged error, and in light of all the circumstances, it would have been logical for him to have rejected the plea agreement and proceeded to trial.

---

[5]     The Government does not concede as true any facts alleged by Smith as to the violations of the IAD or defense counsels' representation of him.

Accordingly, for all of these reasons, Smith's 2255 Motion should be dismissed in its entirety without an evidentiary hearing.

## I.   LEGAL STANDARD

A federal prisoner may petition the court that imposed the sentence to "vacate, set aside, or correct the sentence" if: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255.

The relief sought under § 2255 is reserved for extraordinary circumstances. *United States v. Solomon*, 12-cv-0282, 2013 U.S. Dist. LEXIS 31211, at *1 (W.D. Pa. Mar. 7, 2013) (quotations omitted) (citing *Brecht v. Abahamson*, 507 U.S. 619 (1993)).  Importantly, a § 2255 motion is not a substitute for a direct appeal, *Government of the V.I. v. Nicholas*, 759 F.2d 1073, 1074-75 (3d Cir. 1985), and serves only to protect a defendant from a violation of the constitution or from a statutory defect so fundamental that a complete miscarriage of justice has occurred. *United States v. Robles*, D.C. Civ. No. 2005-091, 2012 U.S. Dist. LEXIS 40135, at *10 (D.V.I. Mar. 23, 2012) (quotations and citations omitted). *See also Hill v. United States*, 368 U.S. 424, 428 (1962) (a defendant must demonstrate a "fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure").

## II.   SMITH'S MOTION IS UNTIMELY AND MUST BE DENIED

Section 2255 motions must be filed within one year from "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1).  In Smith's case, the judgment of conviction was filed on or about April 17, 2007. *See* Ex. B.  When, as is the case here, a defendant does not directly appeal his conviction, the judgment of conviction becomes final when the time for filing a notice of appeal expires. *See United States v. Johnson,* 590 F. App'x 176, 177 (3d Cir. 2014) ("the one-year limitations period [pursuant to § 2255(f)(1)] begins when the conviction becomes final"); *Sanchez-Castellano v. United States,* 358 F.3d 424, 428 (6th Cir. 2004); *Wims v. United States,* 225 F.3d 186, 188 (2d Cir. 2000).  Therefore, the judgment of conviction in this case became final on or about May 1, 2007. *See* Fed. R. App. P. 4(b) (requiring defendants to file notices of appeals within 14 days from the date of judgment, in relevant part).  As such, the one-year limitations period expired on or about May 1, 2008 – more than six years before Smith filed the instant motion on November 13, 2014.

### A.   Section 2255(f)(4)'s Limitations Period Does Not Apply

Smith appears to rely on § 2255(f)(4) in arguing that his motion is timely, because he only just discovered (1) the existence of the detainer, and (2) the IAD and his rights thereunder, in or around December 2013. (Dkt. No. 1 at 16.) For the reasons set forth below, neither of these assertions are legally sufficient to invoke § 2255(f)(4).

Section 2255(f)(4) states that the one-year limitations period begins to

run on "the date on which the *facts* supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(4).  Examples of facts that could be discovered via due diligence include information publicly available on district court and state court dockets. *See United States v. Berger*, Crim. No. 09-308, 2015 U.S. Dist. LEXIS 87932, at *9-10 (W.D. Pa. July 7, 2015); *Blanding v. United States*, No. 1:11-cr-00051, 2015 U.S. Dist. LEXIS 44792, at *12-13 (M.D. Pa. Apr. 6, 2015).

In the context of § 2255(f)(4), "ignorance of the law, even for an incarcerated *pro se* petitioner, generally does not excuse prompt filing." *United States v. Galvan*, 408 F. App'x 224, 225 (10th Cir. 2011).  Moreover, defendants must point to the existence of facts or factual predicates that they could not have discovered with due diligence in order to invoke § 2255(f)(4). *See United States v. Azubuike*, 267 F. App'x 731, 732-33 (10th Cir. 2008) (defendant's failure to point to "any *facts* that he could not have discovered at the time of his conviction," as opposed to "*laws* that he did not discover," rendered his 2255 motion untimely) (emphasis in original); *United States v. Astorga*, 457 F. App'x 698, 699 (9th Cir. 2011) (upholding denial of § 2255 motion where appellant "did [not] learn of any new facts that he could not have discovered through the exercise of due diligence," and where appellant "merely learned of the legal significance of the alleged facts that existed at the time of his conviction").

Here, it is certainly not "due diligence" to take over nine years to discover the existence of a federal detainer that was always part of Smith's inmate file,

and over six years to file a § 2255 motion.  Furthermore, most of the facts that form the basis for Smith's claims were either known to him at or before the time his conviction became final, or could have been discovered through due diligence.  For instance, Smith was obviously contemporaneously aware (i) of the existence of pending federal criminal charges against him, (ii) that he was being shuttled between the New Jersey Department of Corrections ("NJ DOC") and federal court to answer for these federal criminal charges, and (iii) his trial began over two years after his initial arraignment on the first Indictment.

Likewise, Smith could have, with due diligence, discovered the existence of the federal detainer in or around January 2004, when it was filed with the NJ DOC and made part of Smith's electronic record.  As Smith points out in his 2255 Motion, the detainer was entered in January 2004 and made part of his inmate electronic record. (Pet'r's Br. 3.)  Smith has presented no evidence that he was unable to request information from prison officials, or that these officials took steps to conceal the existence of the detainer from him by hiding it or failing to log it and make it part of the file, such that he could not have discovered certain facts through exercise of due diligence. *See Azubuike*, 267 F. App'x at 732.  Thus, regardless of what prison officials said—or did not say—to Smith about his legal rights under the IAD, the evidence suggests that the fact of the detainer's existence was readily available to Smith, as it was lodged with the NJ DOC and made part of his official prison record. (Dkt. No. 1 Attach. 2 p. 2.)

Smith's second argument also fails because §2255(f)(4)'s reference to discovery of "facts" does not include discovery or recognition of the "legal significance of those facts." *Thomas v. United States*, No. 2:11-cv-08019, 2014 U.S. Dist. LEXIS 132483, at *11 (N.D. Ala. Sept. 22, 2014) (collecting cases); *Blay v. United States*, Civ. No. 12-1381 (FLW), 2013 U.S. Dist. LEXIS 37634, at *8 (D.N.J. Mar. 18, 2013) ("the limitations period [under § 2255(f)(4)] begins to run when the defendant knows—or, through diligence, could discover—the important facts, not when the defendant recognizes their legal significance"). Thus, a defendant's failure to appreciate the legal significance of a "hitherto known factual predicate does not delay the running of the § 2255 limitations period." *United States v. Morales*, 71 F. App'x 692, 693 (9th Cir. 2003) (rejecting contention that § 2255 limitations period was tolled where defendant "did not realize until December 1998 that the government's alleged bribery of principal witnesses who testified against him at trial was, in fact, illegal"); *Ford v. Gonzalez*, 683 F.3d 1230, 1235-36 (9th Cir. 2012) (state habeas equivalent of §2255(f)(4) "does not apply where a state prisoner "relies on a factual predicate and speculative inferences therefrom which have been present since the trial itself (whether or not they were recognized by anyone)"); *Owens v. Boyd*, 235 F.3d 356, 359-60 (7th Cir. 2000) ("the time commences when the factual predicate 'could have been discovered through the exercise of due diligence', not when it was actually discovered by a given prisoner," and the "trigger" is "(actual or imputed) discovery of the claims 'factual predicate,' not recognition of the facts' legal significance.").

Where, as here, a defendant was aware of, or with simple due diligence could have been aware of, all of the facts that now underlie his argument—namely his repeated transfers, the existence of the federal detainer, and the length of time between his arraignment and ultimate trial date—at the time of his criminal proceedings, then § 2255(f)(4) does not apply.  Accordingly, Smith's 2255 Motion should be dismissed because it is untimely.

### B.   Equitable Tolling Does Not Apply

To the extent Smith is arguing that, despite his untimely filing, (*see* Pet'r's Br. 16), he is entitled to equitable tolling, this argument should be rejected.  To qualify for equitable tolling, Smith must show that (1) he faced extraordinary circumstances that stood in the way of timely filing, and (2) he exercised reasonable diligence. *United States v. Johnson*, 590 F. App'x 176, 179 (3d Cir. 2014) (internal and external quotations omitted) (quoting *Pabon v. Mahanoy*, 654 F.3d 385, 399 (3d Cir. 2011)).  The Third Circuit has cautioned that this is a remedy "which should be invoked 'only sparingly.' " *Dickson v. United States*, Civ. No. 12-7001 (PGS), 2015 U.S. Dist. LEXIS 100015, at *6 (D.N.J. July 31, 2015) (quoting *United States v. Bass*, 268 F. App'x 196, 199 (3d Cir. 2008)).

Smith cannot make any of these showings.  First, Smith has not (and cannot) show that he was the victim of "extraordinary circumstances." Although he has alleged ineffective assistance of counsel insofar as counsel failed to inform him of his IAD rights, these are not extraordinary circumstances which justify equitable tolling. *Dickson*, 2015 U.S. Dist. LEXIS

100015, at *7 (quotations omitted) (citing *Bass*); *Brown v. Shannon*, 322 F.3d 768, 774 (3d Cir. 2003) ("mere mistake or negligence on the part of an attorney" does not constitute "extraordinary circumstances required for equitable tolling"). Accordingly, Smith fails to meet the first prong required to show equitable tolling of the limitations period.

Second, by failing to file the instant motion until over six years after the expiration of the limitations period, Smith clearly has not exercised reasonable diligence in asserting his claims. Indeed, as discussed above, the facts central to his claims—namely, his repeated transfers between NJ DOC and federal court coupled with the existence of the federal detainer—were facts either known to him at the time of his criminal proceedings (the transfers) or could have been discovered with due diligence (the existence of the federal detainer). Thus, Smith also fails the second prong and is therefore not entitled to equitable tolling. Because equitable tolling does not apply here, Smith's 2255 Motion should be dismissed for failure to file within the applicable one-year limitations period.

## III.   SMITH WAIVED HIS RIGHT TO MAKE SUBSTANTIVE CLAIMS IN A § 2255 MOTION

Even if Smith could properly bring his 2255 Motion at such a late date, he would be foreclosed from raising the substantive claims argued therein; Smith has waived those claims for the reasons that follow below:

### A.   Smith's Plea Agreement Prohibits the Filing of a § 2255 Motion

Under the written terms of Smith's plea agreement, Smith explicitly

waived his right to file a § 2255 motion to vacate and/or set aside his sentence. Specifically, Smith knowingly and voluntarily waived his right "to file any appeal, any collateral attack, or any other writ or motion, including but not limited to an appeal under 18 U.S.C. § 3742 or a motion under 28 U.S.C. §2255, which challenges the sentence imposed by the sentencing court if the sentence imposed is 360 months' imprisonment or less." *See* Ex. A at 11, ¶ 22.

Moreover, at Smith's plea hearing before this Court on September 21, 2006, the terms of the plea agreement were summarized and placed on the record.  In fact, the Court conducted a thorough colloquy regarding the nature of the rights Smith was waiving.  First, the Court looked at the language of the plea agreement:

| | |
|---|---|
| COURT: | Reading carefully paragraph 22 (summarized above), I think that the agreement with respect to waiver is if Mr. Smith gets a sentence of 360 months or less, he's not going to have the right to file an appeal; is that correct? |
| AUSA: | That's correct, your Honor.  And if he gets 360 months plus one day, he would have the right of appeal. |
| COURT: | Understood? |
| DEFENDANT: | Yes. |

The Court then specifically questioned Smith about the post-conviction rights he was waiving:

| | |
|---|---|
| COURT: | And there's also a right you're giving up in this context, and that's the right to file a post-conviction challenge.  Sometimes they call that a habeas corpus petition.  And you are giving up your right to challenge this sentence under that petition if in fact you get a sentence of 360 months or less; understood? |
| DEFENDANT: | I understand. |

13

The Court sentenced Smith to a term of 314 months' imprisonment. *See* Ex. B at 2.[6]  Because Smith was sentenced to less than 360 months' imprisonment, under the terms of the written plea agreement, and as the Court made clear to Smith at the plea hearing, he is not entitled to challenge his sentence in this manner.  As such, Smith's motion should be dismissed.

### B.   Smith Waived His Substantive Claims When He Pled Guilty

Smith's motion should also be dismissed because, by pleading guilty, Smith waived the right to assert violations of the IAD.[7] *See United States v. Fulford*, 825 F.2d 3, 10 (3d Cir. 1987) ("defendant fails to recognize the fundamental principle that entry of a guilty plea acts as a waiver of the provisions of the [IAD]") (citing *United States v. Palmer*, 574 F.2d 164 (3d Cir. 1978)); *Cochran v. Phelps*, 623 F. Supp. 2d 544, 555-56 (D. Del. 2009) ("a defendant who pleads guilty waives the right to a speedy trial, as well as the right to claim rights under the provisions of the IAD") (citing *Washington v.*

---

[6]    The Court also ordered the sentence to run concurrently with the undischarged state terms of imprisonment imposed in Indictment No. 00-09-2340.  In addition, the Court also adjusted the sentence to give Smith credit for a 46-month period of imprisonment already served by Smith as a result of conduct "taken into account in determining the guideline range for the instance offense of conviction . . . ." Ex. B at 2.

[7]    To the extent Smith argues that he has not waived his right to challenge *post-plea* IAD violations, it is unclear whether IAD rights survive entry of a guilty plea. Although the Eastern District of Pennsylvania has held that the rights do survive, *United States v. Coleman*, Crim. No. 13-356, 2015 U.S. Dist. LEXIS 151949, at *14-17 (E.D. Pa. Nov. 5, 2015), the Third Circuit has yet to rule on this dispute, and there is a Circuit split on the issue. *Compare United States v. Coffman*, 905 F.2d 330, 331-33 (10th Cir. 1990) (IAD rights do not apply post-plea), *with Tinghitella v. California*, 718 F.2d 308, 311 (9th Cir. 1983) (IAD rights encompass sentencing).  It should be noted that the majority of state jurisdictions follow *Coffman*. *See, e.g.*, *Prince v. Nevada*, 55 P.3d 947, 948-51 (Nev. 2002) (analyzing case law and concluding that most state jurisdictions hold that the IAD does not "apply to demands for sentencing hearings") (collecting cases).

*Sobina*, 475 F.3d 162, 166 (3d Cir. 2007) and *Fulford*);[8] *Kowalak v. United States*, 645 F.2d 534 (6th Cir. 1981); *United States v. Eaddy*, 595 F.2d 341 (6th Cir. 1979) ("We also hold the substantive rights accorded to a prisoner under [the Speedy Trial article of the IAD] may be waived, even though the prisoner is not aware of those rights, where there is an affirmative request to be treated in a manner contrary to the procedures prescribed by Article IV(c) or (e)."); *Baxter v. United States*, 966 F.2d 387 (8th Cir. 1992) ("By pleading guilty, Baxter waived his right to assert [IAD] violations.") (citation omitted).

In *Kowalak*, the defendant pled guilty to armed bank robbery and was sentenced in June 1976.  Nearly two years later, the defendant filed a § 2255 motion arguing that his anti-shuttling rights under the IAD were violated.  The court dismissed the motion, holding that "[a]n appellant's guilty plea prior to raising any question of IAD violations was a waiver of his rights under the IAD," and that "[a] valid guilty plea is generally regarded as a waiver of all nonjurisdictional defects or errors."[9] *Id.* (citations omitted).  In so holding, the court explained that "[t]o allow a person to assert violations of the [IAD] beyond the trial stage, without a showing of cause . . . would . . . undercut the policy of

---

[8]     To the extent Smith relies on *Coleman* to argue that post-plea IAD violations survive dismissal, *Coleman* is distinguishable on a number of grounds.  First, Smith's plea agreement distinguishes his case from *Coleman*, because the plea agreement expressly bars Smith from filing any kind of § 2255 motion provided he was sentenced to 360 months or less.  Second, the *Coleman* defendant moved to dismiss his indictment as soon as he learned of the alleged IAD violation and prior to sentencing.  *Coleman*, 2015 U.S. Dist. LEXIS 151949, at *7.  Thus, there was no concern about the "policy of achieving prompt and final judgments," *Kowalak*, 645 F.2d at 537, that is raised here.

[9]     For the reasons set forth *infra* in Section III.D, violation of the IAD is not a jurisdictional defect.

achieving prompt and final judgments." *Id.* (same).  Accordingly, because Smith

pled guilty, he has waived his right challenge any substantive violations of the

IAD, and his 2255 Motion should be dismissed.

### C.      Smith Failed to Preserve His Rights on Direct Appeal

Smith failed to raise his substantive claims on direct appeal and is

therefore procedurally barred from raising them for the first time in a § 2255

motion. *See Parkin v. United States*, 565 F. App'x 149 (3d Cir. 2014).  As a

general rule, where a defendant has failed to raise a claim on direct review, the

claim may be raised in habeas only if the defendant can demonstrate either

cause and prejudice, or actual innocence. *Id.* (quotations omitted);[10] *United

States v. Frady*, 456 U.S. 152, 167 (1982) ("We believe the proper standard of

review of Frady's motion is the 'cause and actual prejudice' standard

enunciated in *Davis v. United States* . . . and later confirmed and extended in

*Francis v. Henderson* . . . . and *Wainwright v. Sykes* . . . ."); *McKnight v. United

States*, 27 F. Supp. 3d 575, 589 (D.N.J. 2014) ("A procedurally defaulted §

2255 motion could be reviewed on the merits only if the defendant shows either

(a) cause and actual prejudice; or (b) actual innocence").

In other words, is Smith wanted to raise substantive IAD claims, he

should have done so on appeal; otherwise, in order to raise them now, Smith

must show cause and actual prejudice, or actual innocence.  Here, Smith is not

claiming "actual innocence" in his § 2255 motion.  This is "important," because

---

[10]      Additionally, a defendant convicted as a result of his guilty plea cannot attack
that plea in a § 2255 motion unless his conviction was first challenged on direct
appeal. *McKnight v. United States*, 27 F. Supp. 3d 575, 589 (D.N.J. 2014) (quotations
omitted) (citing *United States v. Garth*, 188 F.3d 99, 106 (3d Cir. 1999)).

"when [a] defendant does not deny his involvement in the crime he pled guilty to, his 'failure to disavow those charges supports a finding that he would have been convicted had the case gone to trial' and his plea did not cause him prejudice." *McKnight*, 27 F. Supp. 3d at 589.

In practice, claims of "cause and actual prejudice" are often paired with and analyzed in the context of "ineffective assistance of counsel" claims, because the latter type of claims do not need to be raised on direct appeal. *See McKnight*, 27 F. Supp. 3d at 589 (noting that a defendant who pleads guilty "waives all pre-plea and plea-unrelated claims" and that "his § 2255 motion must be limited to an attack on his plea and/or the assistance of his counsel provided in connection with that plea"); *United States v. Bates*, Civ. No. 3:04-CR-0251, 2008 U.S. Dist. LEXIS 1096, at *6-7 (M.D. Pa. Jan. 7, 2008) ("Because even challenges that generally cannot be reviewed for the first time on a § 2255 motion may be reviewed 'as part of a successful claim that counsel provided ineffective assistance' . . . Bates' challenge to his Indictment . . . will be discussed in the context of his ineffective assistance of counsel claim") (citations omitted).  For the reasons discussed below in Section V, Smith cannot show "actual prejudice" (or ineffective assistance of counsel) and therefore is not entitled to raise substantive IAD claims in a § 2255 Motion. Accordingly, his motion should be denied.

### D.   Smith Waived His Right to Challenge This Court's Jurisdiction Over His Plea Hearing

Smith's claim that the Court lacked subject matter jurisdiction over his plea should be rejected. (*See* Pet'r's Br. 13.)  First, as discussed above, this

claim is meritless because Smith waived the ability to raise such a claim by virtue of pleading guilty and by then failing to raise any jurisdictional issue on direct appeal.  Second, arguments like Smith's have previously been considered and rejected by the Third Circuit in *United States v. Palmer*, 574 F.2d 164 (3d Cir. 1978).  In *Palmer*, the defendant argued that an IAD violation that occurred before his guilty plea and sentencing meant that the indictment against him should have dismissed.  Accordingly, he argued, because there should have been no indictment, the court lacked subject matter jurisdiction over his subsequent guilty plea and sentence.

In rejecting this argument, the Third Circuit noted first that "the Supreme Court has consistently held that even deprivation of *constitutional* rights occurring prior to the entry of a guilty plea may not be asserted in subsequent proceedings." *Id.* at 167 (citations omitted).  Accordingly, if constitutional claims can be waived upon entry of a guilty plea, then it stands to reason that "procedural rules" can certainly be waived, as well.  Thus, the *Palmer* court held that "the nature of defendant's rights under the IAD" "constitutes nothing more than a set of procedural rules," and the "statutory right to dismissal due to an administrative violation of these rules is therefore not 'fundamental,' even though its impact on a defendant may be great." *Id.* (citations omitted).

Indeed, while the Third Circuit acknowledged the general rule that "errors and defenses which go to the jurisdiction of the court to accept a guilty plea may be raised even after the plea has been entered," *id.*, (citation omitted),

18

the court noted that "whether a claim is 'jurisdictional' or not depends on the source and importance of the right asserted as well as its impact." *Id.*  In so holding, the *Palmer* court distinguished the defendant's IAD rights as "not sufficiently important to deny a court jurisdiction to entertain a guilty plea where the defendant fails to raise the issue in a timely manner." *Id.*

In reaching this conclusion, the court specifically compared and contrasted the rights provided under the IAD with arguably more important constitutional rights, such as the right to suppress a confession or the right to dismissal because of an improperly constituted grand jury. *Id.*  The court concluded that it would be "anomalous for us to hold that the statutory rights derived from the IAD cannot be waived" despite the fact that these other constitutional rights can be waived. *Id.* (citations omitted).

Accordingly, in light of the fact that (1) Smith waived his ability to raise the jurisdictional claim by pleading guilty and by failing to preserve it on direct appeal, and (2) the Third Circuit has squarely rejected Smith's argument, his 2255 Motion should be denied in its entirety.

## IV.   SMITH'S SUBSTANTIVE CLAIMS ARE NOT COGNIZABLE UNDER § 2255

Even if Smith's 2255 Motion was timely, and even if it was not barred for three separate reasons, Smith's substantive claims would nevertheless be without merit.  That is because not every violation of the IAD is cognizable on collateral review.  In *Casper v. Ryan*, 822 F.2d 1283, 1289 (3d Cir. 1987), the Third Circuit acknowledged that a defendant's claim that his IAD anti-shuttling rights were violated is cognizable under § 2255. *Id.* (citing *United States v.*

19

*Williams*, 615 F.2d 585 (3d Cir. 1980) and *United States ex rel. Esola v. Groomes*, 520 F.2d 830 (3d Cir. 1975)).  The Third Circuit cautioned, however, that these cases did not "stand[] for the proposition that any minor violation of any IAD provision requires a federal court to grant habeas relief." *Id.* at 1289-90.  The court must first consider whether the alleged IAD violations are "such [] fundamental defect[s]" that the defendant is entitled to the relief he seeks. *Id.* at 1290; *Cooney v. Fulcomer*, 886 F.2d 41, 44 (3d Cir. 1989) ("[T]he appropriate inquiry [is] whether the claimed error of law [is] 'a fundamental defect which inherently results in a complete miscarriage of justice,' and whether 'it . . . [presents] exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent'") (quoting *Davis v. United States*, 417 U.S. 333, 346 (1974)).

### A.    Claim One Does Not Merit Relief

In Claim One, Smith seeks to vacate his sentence on the ground that prison and government officials failed to notify him of his rights under the IAD. (Dkt. No. 1 at 5-6; Pet'r's Br. 11-14.)  Notably, the IAD expressly limits dismissal of an indictment to three circumstances – and it does not extend the dismissal right to Smith's "failure to notify" claim. *See*, *e.g.*, *United States v. Lualemaga*, 280 F.3d 1260, 1263-64 (9th Cir. 2002); *United States v. Robinson*, 290 F. Supp. 2d 808, 813-14 (E.D. Mich. 2003).  In the Third Circuit, only violations of the Anti-Shuttling Rights themselves – not failures to notify – have been held to be "so fundamental" as to warrant habeas relief. *Cooney*, 886 F.2d at 44.  In contrast, "minor, technical violations of the IAD are not sufficient to

require granting habeas relief." *Id.*  Accordingly, it stands to reason that where there is no specific dismissal remedy, such as the case with the violation alleged by Smith in Claim One, there can be no "fundamental defect" that rises to the level of a "miscarriage of justice," and relief under § 2255 is unwarranted. *See Pero v. Duffy*, Civ. No. 10-3107 (JAP), 2013 U.S. Dist. LEXIS 176068, at *35-36 (D.N.J. Dec. 16, 2013) (distinguishing between IAD violations that are and are not "fundamental defect[s]" entitling defendants to habeas relief).  Therefore, Claim One should be dismissed.

### B.  Claims Five and Six Do Not Merit Relief

Claims Five and Six allege violations of Smith's speedy trial rights under the IAD.  In *Sterling v. Tennis*, Civ. No. 05-143, 2006 U.S. Dist. LEXIS 37671, at *24 (E.D. Pa. Mar. 7, 2006), a defendant challenged his conviction on the ground that his criminal case was not disposed of within either the 120- or 180-day limits that comprise the speedy trial rights under the IAD.  In rejecting this claim, the court first observed that "it is not clear that violations of the time limits contained in Articles III(a) and IV(c) are fundamental defects which inherently result in a miscarriage of justice; if they are not, violations of those time limits cannot justify habeas relief." *Id.* at *27 (citing *Reed v. Farley*, 512 U.S. 339, 348 (1994)).  Next, the court looked to *Reed v. Farley*, 512 U.S. 339 (1994), for guidance on this question. *Id.*  The court noted that "[a]ll of the opinions written in [*Reed*] either state or suggest the majority had concluded that a violation of the 120-day limit contained in Article IV(c) is not a fundamental defect." *Id.*  Accordingly, the court concluded that neither the

120-day nor the 180-day limits comprising the IAD's speedy trial rights were fundamental defects that merited habeas relief. *Id.* at *29; *Casper*, 822 F.2d at 1282-83 (deeming a violation of IAD's speedy trial rights a "minor violation[]" and declining to grant habeas corpus relief for such a violation where doing so would "trivialize the habeas corpus writ").

In short, because Claims Five and Six are not "fundamental defects" that rise to the level of a "miscarriage of justice," Smith's requested relief should therefore be denied.

## V.   SMITH'S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM IS WITHOUT MERIT

As stated above, Smith's motion also raises an ineffective assistance of counsel argument in Claim Two. (Dkt. No. 1 at 5; Pet'r's Br 7-11.)  This claim, however, should be rejected.  As explained more fully below, Smith cannot satisfy the two-pronged test required for ineffective assistance of counsel.

### A.   Legal Framework

In order to establish ineffective assistance of counsel, a defendant bears the burden of meeting the two-pronged test of *Strickland v. Washington*, 466 U.S. 668 (1984). *See Smith v. Robbins*, 528 U.S. 259, 295 (2000).  First, the defendant bears the burden of showing that his "counsel's performance was so deficient that it fell below an objective standard of reasonableness under prevailing professional norms." *Buehl v. Vaughn*, 166 F.3d 163, 169 (3d Cir. 1999).  "This requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Id.* (quoting *Strickland*, 466 U.S. at 687).  In making this

22

determination, courts must "refrain from 'second-guess[ing] counsel's assistance,' " and " 'eliminate the distorting effects of hindsight.' " *McBride v. Houtzdale*, 687 F.3d 92, 102 (3d Cir. 2012) (quoting *Strickland*, 466 U.S. at 689).  Because there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and "might be considered sound trial strategy," *Strickland*, 466 U.S. at 689, "[i]t is 'only the rare claim of ineffectiveness of counsel that should succeed.' " *United States v. Hankerson*, 496 F.3d 303, 310 (3d Cir. 2007) (quoting *United States v. Gray*, 878 F.2d 702, 711 (3d Cir. 1989)).

Second, the defendant must show that "the deficient performance prejudiced the defense," that is, " 'there is a reasonable probability,' " which " 'is a probability sufficient to undermine confidence in the outcome,' " that, " 'but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Buehl*, 166 F.3d at 169 (quoting *Strickland*, 466 U.S. at 694); *see Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).  This means that a defendant bears the burden of proving that, absent the deficiency, the result of the entire proceedings would have been different. *See Kimmelman*, 477 U.S. at 375.

Where a defendant challenges his decision to plead guilty, the "defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *United States v. Dung Bui*, 795 F.3d 363, 367 (3d Cir. 2015) (internal quotations omitted) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).  More

23

specifically, a defendant must show that it would have been rational for him to reject the plea bargain under all the circumstances. *See United States v. Pham*, 587 F. App'x 6, 12 (3d Cir. 2014) (rejecting ineffective assistance of counsel claim where defendant did not "show[] that it would have been rational for him to reject the plea bargain," especially "given the strong case against him"); *United States v. Mancebo*, Crim. No. 11-CR-073, 2014 U.S. Dist. LEXIS 93020, at *12 (M.D. Pa. July 9, 2014) (same).

A showing of prejudice cannot be made on the basis of mere speculation, *see Gray*, 878 F.2d at 712, "vague" or "irrelevant" allegations, *United States v. Dawson*, 857 F.2d 923, 928 (3d Cir. 1988); *Government of the Virgin Islands v. Bradshaw*, 726 F.2d 115, 117-18 (3d Cir. 1984), or in the face of overwhelming evidence of guilt. *See Buehl*, 166 F.3d at 172.  Therefore, " '[v]ague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the district court.' " *Johnson v. United States*, 294 Fed. Appx. 709, 710 (3d Cir. 2008) (not precedential) (quoting *United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000)).

Courts are entitled to consider "the *Strickland* prongs in either order," *Strickland*, 466 U.S. at 670, and the Third Circuit has actually counseled that "it is often practical to consider the prejudice prong first." *United States v. Fazio*, 795 F.3d 421, 426 (3d Cir. 2015). *See also United States v. Booth*, 432 F.3d 542, 546 (3d Cir. 2005) ("We have endorsed the practical suggestion in *Strickland* to consider the prejudice prong before examining the performance of counsel prong 'because this course of action is less burdensome to defense

counsel.' ") (cited in *Fazio*); *United States v. Cegledi*, No. 13-3958, 2015 U.S. App LEXIS 12543, at *4 (3d Cir. 2015) ("There is no reason for a court deciding an ineffective assistance of counsel claim to . . . address both components of the inquiry if the defendant makes an insufficient showing in one.  In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice [prong.]") (citation omitted).

If a § 2255 motion "clearly fails to demonstrate either deficiency of counsel's performance or prejudice to the defendant, then the claim does not merit a hearing." *Dawson*, 857 F.2d at 928.  As the Third Circuit has explained, "bald assertions and conclusory allegations do not afford a sufficient ground for an evidentiary hearing." *Campbell v. Burris,* 515 F.3d 172, 184 (3d Cir. 2008) (quoting *Mayberry v. Petsock*, 821 F.2d 179, 185 (3d Cir. 1987)).

### B.  Smith's Claim Should Be Denied Because He Cannot Show Actual Prejudice

As noted above, Smith accuses defense counsel of being ineffective for failing to inform him of his rights under the IAD.[11]  Assuming *arguendo* that these allegations are true, Smith's claim nevertheless fails because he cannot show that "the result of the proceeding would have been different" had counsel not made the alleged errors. *Buehl*, 166 F.3d at 169 (quoting *Strickland*, 466 U.S. at 694).  Because Smith cannot show this prejudice, this Court should

---

[11]     Smith also implies that he only now understood he had an ineffective assistance of counsel claim, because he heretofore did not know about his rights under the IAD.  For the reasons discussed above in Section II.A, this is of no import. *See Owens*, 235 F.3d at 359 (rejecting defendant's argument that habeas petition was timely filed "when [defendant] actually understands what legal theories are available.").

deny his motion without a hearing. *See United States v. Nino*, 878 F.2d 101, 105 (3d Cir. 1989); *Dawson*, 857 F.2d at 930-31.[12]

In support of his claim of "actual prejudice," Smith's allegations consist of the following: (i) he only agreed to plead guilty because the Government "stressed" that he take a plea, and (ii) if defense counsel had successfully moved to dismiss the Third Superseding Indictment "without prejudice," Smith would have "felt comfortable" going to trial on the basis that his defense counsel would have given him a "meaningful defense." (Pet'r's Br. 11.)  For the reasons discussed below, these conclusory, self-serving allegations do not come close to showing "actual prejudice" under *Strickland*.

### 1.    Conclusory Allegations Are Not Sufficient

Smith's primary contention supporting his ineffectiveness claim is that, had counsel informed him of his rights under the IAD and sought dismissal "without prejudice," he would have felt "comfortable" enough with counsel to proceed to trial. (Pet'r's Br. 11.)  Smith makes no effort to explain how or why counsel's filing and winning a dismissal motion without prejudice would have somehow altered the facts and thus the reasonable probability that Smith would have opted for a trial instead of pleading guilty.  In any event, this is precisely the type of statement courts routinely reject in assessing whether defendants have suffered actual prejudice. *See*, *e.g.*, *Armstrong v. United States*,

---

[12]    In considering claims of ineffective assistance of counsel, the Third Circuit has explained that courts should consider the prejudice prong before the performance prong, as that approach is less burdensome to defense counsel. *See United States v. Lilly*, 536 F.3d 190, 196 (3d Cir. 2008).

Civ. No. 13-2029 (SDW), 2015 U.S. Dist. LEXIS 86989, at *18 (D.N.J. July 6, 2015) (dismissing defendant's "unsupported assertions" that he would have gone to trial in light of strong evidence, "significant additional sentencing exposure," and the possibility of losing 3-point reduction for acceptance of responsibility); *Dixon v. United States*, Civ. No. 04-3985 (JAG), 2006 U.S. Dist. LEXIS 99917, at *7-8 (D.N.J. Dec. 4, 2006) (rejecting defendant's "bare allegation" that he would have gone to trial but for counsel's alleged error); *Campbell v. Burris*, 515 F.3d 172, 184 (3d Cir. 2008) ("a showing [of *Strickland*-type prejudice] may not be based on mere speculation . . . ."); *David v. United States*, 134 F.3d 470 478 (1st Cir. 1998) (no hearing necessary on "gossamer" and "threadbare" allegations of defendant, which omitted specifics that "might have placed matters of ascertainable fact at issue and thus have bolstered the case for an evidentiary hearing").  Accordingly, because Smith has failed to offer specific facts suggesting that, but for his counsel's error, he would have proceeded to trial, his claim should be dismissed on this ground alone.

## 2.   The Indictments Would Have Been Dismissed Without Prejudice

The second reason Smith's claim should be dismissed is that he cannot show actual prejudice.  Smith correctly notes that, if his Anti-Shuttling Rights were violated, the IAD provides a remedy of dismissal with or without prejudice. (Pet'r's Br. 7.)  Smith also correctly notes that, in deciding whether to dismiss an indictment with or without prejudice, the IAD directs courts to

27

consider (1) the seriousness of the offense,[13] (2) the facts and circumstances of the case which led to the dismissal, and (3) the impact of a re-prosecution on the administration of the agreement on detainers and the administration of justice. *Munez v. United States*, 462 F. App'x 172, 174 (3d. Cir. 2011) (upholding denial of defendant's claim that counsel was ineffective for failing to notify him of IAD right, thereby prejudicing him under *Strickland*).[14]  However, these factors do not support Smith's assertion that the indictment would have been dismissed with prejudice and instead suggest the opposite conclusion.[15]

First, there can be no doubt that the offenses with which Smith was charged were serious.  Smith was charged with being the co-leader of the Double II Bloods set, and in that capacity, engaging in a RICO conspiracy with numerous predicate acts involving murder, attempted murder, and conspiracy

---

[13]     Smith incorrectly applies this first factor.  The "seriousness of the offense" courts must consider is Smith's offense – not the alleged IAD violation. (Pet'r's Br. 8.)

[14]     While Munez was given a hearing by the district court to determine the issue of *Strickland*-type prejudice, *Munez v. United States*, Civ. No. 09-3860 (JBS), 2010 U.S. Dist. LEXIS 73583, at *16,the case law above makes clear that prejudice can be determined without a hearing.  Moreover, *Munez* is distinguishable from Smith's case on a number of grounds.  First, Munez timely filed his § 2255 motion.  Second, unlike Munez, it is apparent from the record that Smith fails the *Strickland* prejudice prong: he cannot show that it would have been logical for him to have rejected the plea agreement, and he cannot show actual prejudice, because (as in *Munez*) the indictment would not have been dismissed with prejudice.  Third, Munez alleged systematic violations of the IAD by the United States Marshals Service. *See Munez v. United States*, Civ. No. 09-3860 (JBS), 2011 U.S. Dist. LEXIS 5845, at *6-7 (D.N.J. Jan. 20, 2011).

[15] Moreover, given that the original Indictment did not charge a RICO violation and only charged firearms trafficking, even if this indictment was dismissed *with prejudice*, it would not have affected the outcome here, because the Government would have filed the same Indictment it ultimately filed, charging Smith with a host of RICO violations, firearms offenses, and drug offenses.

to commit murder, as well as conspiracy to distribute heroin and crack cocaine.  Smith's total sentencing exposure was life imprisonment, and at just 26 years old, he had accrued enough criminal history points to place him in the highest Criminal History Category at the time of sentencing.  All of this counsels strongly in favor of a finding that Smith's offense was serious.  Indeed, in *Munez*, the Third Circuit explained that the offense of possession with intent to distribute more than 5 grams of cocaine base was a "serious" offense, carrying penalties far less than those Smith faced in his criminal proceedings. *See Munez*, 462 F. App'x at 175 (holding that "sentencing ranges are one indication of a crime's seriousness," noting Munez's lengthy criminal history that placed him "in the top of the Sentencing Guidelines category," and concluding that possession with intent to distribute crack cocaine is a "serious offense") (citing *United States v. McKinney*, 395 F.3d 837, 841 (8th Cir. 2005)); *United States v. Gouse*, 798 F.3d 39, 44 (1st Cir. 2015) (charges relating to a "distribution-level quantity of drugs and a gun that was sufficient to trigger a 924(c) charge" were "extremely serious offenses that should not go completely without the potential of prosecution just by virtue of this technical violation."); *United States v. Macomber*, 717 F.3d 607, 611 (8th Cir. 2013) (holding that "[t]he seriousness of the offense depends in part upon 'the nature of the conduct charged and the potential sentence'" and concluding that bank robbery and possession of a firearm in furtherance of the robbery are serious offenses) (citation omitted).

Second, the circumstances of the alleged violation are also to be

considered.  Here, assuming Smith's Anti-Shuttling Rights were violated, they consisted of being transported back and forth between state prisons in New Jersey and federal court for various discrete proceedings.  There is no indication that law enforcement officers or the Government purposefully violated Smith's rights, nor is there any indication they filed the wrong form.  Even if there was, this allegation alone would not counsel in favor of dismissal.  *See Munez*, 462 F. App'x at 175 (discussing administrative oversight that led to incorrect detainer form being filed against Munez and rejecting Munez's argument that dismissal with prejudice was the only way to "discourage similar oversights in the future.").  Indeed, even assuming negligence, this alone will not counsel in favor of dismissal with prejudice. *Id.* (noting possible negligence by the Marshals—which was not "condoned"—but declining to dismiss with prejudice where the Marshals took steps to remedy the problem).  Unlike Munez, Smith has not alleged that his violations were part of a widespread pattern.  Accordingly, nothing about the circumstances of the alleged violations of Smith's Anti-Shuttling Rights merits a finding that dismissal would have been with prejudice.

Finally, Smith has presented no evidence that reprosecution would have adversely affected the IAD and the administration of justice. *Id.* at 176.  Smith asserts that his "rehabilitation" was interrupted each time he was transported to federal court, but he makes no reference to any specific rehabilitation program or treatment he was otherwise receiving that would have been interrupted or disrupted by an alleged violation of his Anti-Shuttling Rights, as

opposed to the necessity that he be transported to federal court to answer to these very serious federal criminal charges.[16] *Id.* (distinguishing Munez's case from instances where "it is important that the state corrections system retain unbroken control over a prisoner, [such] as when the prisoner is in rehabilitation program.").  Moreover, Smith's other complaints appear untethered to the alleged violation of his Anti-Shuttling Rights.  He claims he was placed in a special segregation unit and denied contact visits with his family, but this appears due to the nature of the allegations contained in the Indictment against Smith, namely his gang affiliations and the potential danger they posed for other inmates and prison officials. *See* Dkt. No. 1 at 10-11 (noting that federal agents sent NJ DOC officials a letter detailing charges against Smith, which Smith claims led to him being placed in a segregated unit).

In short, Smith has not shown that "there is a reasonable probability that the [trial court] would have dismissed his indictment with prejudice had it known of the [IAD] violations." *Munez*, 462 F. App'x at 175.  Accordingly, he cannot show prejudice under *Strickland*, and his motion should be denied.

### 3.    Smith Cannot Show It Would Have Been Logical For Him to Reject the Plea Agreement

Finally, Smith cannot show that it would have been logical under the circumstances to reject his plea agreement and proceed to trial.  First, Smith

---

[16]    Additionally, Smith's transfers were entirely in-state transfers between New Jersey state prisons and Newark federal court as opposed to inter-state transfers, which would necessitate a defendant's temporary overnight custody in New Jersey. This thus casts doubt on Smith's contention that he was never "present" in prison to be able to participate in any rehabilitation programs.

concedes that his counsel assessed the strength of the Government's case and "expressed his concern of the outcome if [Smith] went to trial," "[s]tating, it was an uphill battle, and he didn't see them prevailing." (Pet'r's Br. 11.)  The record supports counsel's assessment that winning at trial would be an "uphill battle" for Smith based on the strength of the Government's evidence.  Indeed, given that Smith was charged with committing racketeering acts and was already serving a state prison sentence for murder, which was one of the racketeering acts alleged in the Indictment, it is reasonable to infer that the Government's case against Smith was very strong.

In addition, with respect to the murder conspiracy formed on or about October 21, 2001 (Count Seven) charged in the Third Superseding Indictment, the Government was prepared to offer testimony from other Double II members who attended a meeting with Smith, wherein he selected other Double II members Preston Jones ("Jones") and Samuel Wright to assist in murdering rival gang members. *See United States v. Jones*, 566 F.3d 353, 361 (3d Cir. 2009) (detailing sufficiency of Government's proof of murder conspiracy as to Jones, where evidence included testimony of "four gang members" who testified about the purpose of the October meeting to "select members to carry out" violent acts of retaliation," and that other gang members supplied Jones and Wright with loaded guns).

Moreover, Smith is not alleging in the instant motion any claims of actual innocence.  Smith's self-serving allegations aside, the record does not suggest that Smith desired to plead not guilty, but instead suggests his desire to avoid

a harsher penalty at trial by accepting the Government's earlier-offered plea agreement.  Further, as explained above, Smith has not shown why knowing about his IAD rights would have made a whit of difference in this calculus.

The parties' statements at Smith's plea hearing also make clear that he was taking advantage of the benefit of pleading guilty and thereby avoiding the harsher sentencing sanctions that he would have faced had he been convicted at trial.  For instance, the Court asked Smith "do you agree that your plea agreement allows you to get a lower sentence than you would if you were convicted of all of the charges in the superseding indictment?" and Smith responded "Yes."  Similarly, the Court asked defense counsel if that was his understanding, and counsel replied "[t]hat's correct, Your Honor."  The Court also asked counsel if he "talked over with [Smith] the sentencing exposure that he would have faced if he were convicted after the trial that we are prepared to begin as opposed to what he faces as part of his plea agreement," and counsel stated that he had.  Finally, the Court questioned the Government as to whether they agreed that "by pleading guilty to [the] plea . . . agreement, [Smith] will be exposed to a lower sentence than he would be exposed to if he were convicted after trial of all offenses and superseding indictment," and the Assistant United States Attorney responded "Yes, Your Honor, significantly lower."

Indeed, by forgoing a trial, Smith received a number of substantial benefits.  First, the Government agreed to drop the majority of the charges against him and to recommend a sentence of no more than 360 months.  In

33

particular, by dropping three firearms-related offenses involving Smith's discharging of a firearm (Counts 37, 39, and 41), Smith avoided the possibility that he would have received a statutory mandatory minimum sentence of 60 years for these offenses alone. *See* 18 U.S.C. §§ 924(c)(1)(A)(iii), (c)(1)(C)(i). Moreover, had Smith been convicted of all the charges against him in the Third Superseding Indictment, he faced a maximum sentence of life imprisonment for the RICO conspiracy alone.  Thus, by accepting the plea agreement, Smith removed the possibility of mandatory minimum sentences on top of spending the rest of his life in prison.  This is undoubtedly a substantial benefit that Smith obtained by waiving his right to a trial.

Second, by entering into the plea agreement, Smith received another benefit, namely the Government's agreement that it would not argue for a 4-level aggravating role enhancement for being an organizer or leader of a criminal activity that involved five or more participants, pursuant to U.S.S.G. § 3B1.1(a).  The benefit accrued to Smith is seen most clearly when Smith's total Guidelines offense level from his plea agreement is compared to the PSR's total Guidelines offense level.  Unlike the Government, the United States Probation Office ("USPO") applied this 4-level enhancement to calculate Smith's offense level and reached a total offense level of 44.  Had the Government followed the USPO calculations, Smith's Guidelines range would have been life imprisonment.[17]  Thus, by choosing enter into a plea agreement, Smith again

---

[17]    The USPO used the 2003 version of the Guidelines Manual, while the plea agreement used the 1998 version.  Regardless of the version used, the guidelines range for a level 44 under either the 1998 or the 2003 version was life imprisonment.

obtained a substantial benefit.

Third, despite the fact that Smith had filed pretrial motions and actually started trial before entering a guilty plea, the Government nonetheless agreed to give him a 3-point reduction for acceptance of responsibility.  Fourth, the Government agreed that Smith's federal sentence should run concurrently with the portion of the sentence imposed by the State of New Jersey in connection with Smith's commission of murder, which was the RICO predicate act to which he ultimately pled guilty.

Thus, based on (i) the strength of the Government's case, which was conveyed to Smith by defense counsel, (ii) Smith's own actions during his criminal proceedings, (iii) comments made by all parties during Smith's plea hearing, and (iv) the substantial benefits given to Smith as a result of pleading guilty, Smith cannot show that it would have been logical for him to reject the plea agreement and proceed to trial.  Accordingly, his claim for ineffective assistance of counsel should be dismissed.

## **CONCLUSION**

For the foregoing reasons, this Court should find that Smith has failed to satisfy the burden of proof required for relief under Section 2255.  This Court, therefore, should deny his motion without the need for an evidentiary hearing. Further, because Smith has failed to make a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), this Court should find that a certificate of appealability should not be issued in this case. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (certificate should issue only where a

defendant has shown "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong").  If this Court disagrees, it should hold an evidentiary hearing and order both of Smith's counsel to supply information about their representation of Smith.


                                        Respectfully submitted,
                                        Paul J. Fishman
                                        United States Attorney


                                        *SRaney*

                                        By: Stephanie Raney
                                        Special Assistant U.S. Attorney

Dated:        January 21, 2016

### CERTIFICATE OF SERVICE

I hereby certify that on January 21, 2016, I served the foregoing Brief of the United States via first class mail on the following:

Quadree Smith
SBI Number 000142555C
South Woods State Prison
215 South Burlington Road
Bridgeton, New Jersey 08302

By: Stephanie Raney
Special Assistant U.S. Attorney